■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOFFRE ALCIVAR, Appellant. [33 NYS3d 227]—

Judgment, Supreme Court, New York County (Gregory Carro, J.), rendered June 14, 2013, convicting defendant, after a jury trial, of predatory sexual assault against a child and course of sexual conduct against a child in the first degree, and sentencing him to an aggregate term of 25 years to life, unanimously affirmed.

The verdict was not against the weight of the evidence (*see*

*People v Danielson*, 9 NY3d 342, 348 [2007]). There is no basis for disturbing the jury's credibility determinations. The victim's recantation of her initial allegation at age six, which was satisfactorily explained, and any weaknesses in her recollection of events that occurred when she was a young child, did not render her testimony incredible. Moreover, her testimony was supported by evidence that she contracted the same sexually transmitted disease (STD) as defendant and his girlfriend.

The admission of the report on defendant's blood test stating that he tested positive for the STD, without giving defendant the opportunity to cross-examine the technician who operated the machine that conducted the testing and automatically generated the report, did not violate defendant's right of confrontation.

*People v John* (27 NY3d 294 [2016]) does not require a contrary result. The Court there, in reliance on *Bullcoming v New Mexico* (564 US 647 [2011]) and *Melendez-Diaz v Massachusetts* (557 US 305 [2009]), held that the defendant's Sixth Amendment right to confront witnesses against him was violated by the admission into evidence of a report regarding the results of DNA typing analysis conducted by New York City's Office of the Chief Medical Examiner, because the People failed to introduce it through the testimony of "an analyst who witnessed, performed or supervised the generation of defendant's DNA profile, or who used his or her independent analysis on the raw data" (27 NY3d 294, 315). The use of "a testifying analyst functioning as a conduit for the conclusions of others" (*id.*) was held to be insufficient to satisfy the Confrontation Clause. In its reasoning, the Court explicitly contrasted the DNA testing performed in that case, by OCME employees who conducted individual analyses of computer-generated information in the course of the testing process, with the kinds of lab reports that contain purely "machine-generated" data analysis (*id.* at 309). Indeed, the Court in *John* cited a footnote from *Melendez-Diaz* which makes clear that the prosecution is not required to produce the testimony of "anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or *accuracy of the testing device*" (*Melendez-Diaz v Massachusetts*, 557 US 305, 311 n 1 [2009] [emphasis added], cited in *John*, 27 NY3d 294, 312).

The lab report at issue here was of the purely "machine generated" category, and the witness whose testimony defendant claims was required was, at best, a technician who tested

the accuracy of the machine before placing the sample in it for testing. Under *People v John* and the U.S. Supreme Court cases on which it relies, the report generated by the machine should not be treated as testimonial, and the absence of testimony by the technician who calibrated the machine did not violate defendant's Sixth Amendment right of confrontation. "[T]he testing and procedures employed . . . were neither discretionary nor based on opinion; nor did they concern the exercise of fallible human judgment over questions of cause and effect" (*People v Rawlins*, 10 NY3d 136, 159 [2008], *cert denied* 557 US 934 [2009] [internal quotation marks and citation omitted]). In addition, contrary to defendant's argument, the report did not directly link him to the crimes, since the "test results, *standing alone*, shed no light on the guilt of the accused" (*id.* [emphasis added]), notwithstanding that they provided circumstantial evidence of guilt in light of other evidence.

The court properly declined to dismiss a panel of prospective jurors on the ground that they had been tainted by hearing the comments of one panelist, who was ultimately dismissed, to the effect that he would be predisposed to credit the child victim's testimony. The record "establishes that a fair and impartial jury was selected" despite any "prejudicial comments" (*People v Cruz*, 292 AD2d 175, 176 [1st Dept 2002], *lv denied* 98 NY2d 696 [2002]), in light of the court's curative instructions on the need to evaluate children in light of the same factors applicable to any other witness, and comments by several other prospective jurors affirming that principle.

The court properly exercised its discretion in precluding defense counsel from showing prospective jurors a photograph of the victim's genitals infected by the STD (*see People v Jean*, 75 NY2d 744 [1989]). The court placed no limitation on the scope of counsel's questioning regarding the prospective jurors' ability to remain fair and impartial when viewing such a photograph or considering the related allegations.

Defendant's pro se ineffective assistance of counsel claims are unreviewable on direct appeal, since they involve matters outside the record (*see People v Rivera*, 71 NY2d 705, 709 [1988]). We have considered and rejected defendant's remaining pro se claims. Concur—Mazzarelli, J.P., Renwick, Saxe, Gische and Kahn, JJ.